**CHAPMAN v. ALTON R. CO.**

No. 7409.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1941.

Lloyd T. Bailey, of Chicago, Ill., for appellant.

Silas H. Strawn and Harold A. Smith, both of Chicago, Ill., for appellee.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

BRIGGLE, District Judge.

This appeal is from a judgment rendered on verdict of a jury, finding issues for defendant in a suit for damages growing out of personal injury. Plaintiff, a brakeman, in the employ of defendant was injured in the early morning of July 13th, 1936, by either falling or being thrown from the running board of a tank car.

Suit was brought on July 12, 1938, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., charging that defendant was negligent:

(1) In having in its train a tank car with a defective air brake, resulting in the brakes grabbing on the tank car and causing the car to jump and sway, thereby causing plaintiff to be thrown from the running board;

(2) In having in its train a tank car with an unsafe running board in that said running board was covered with oil and grease by reason of which plaintiff slipped and was thrown from said car then in a moving train;

(3) In that defendant's road bed at the point of the accident was rough and uneven, causing the tank car in question to sway with such force that plaintiff's hold upon the railing was broken and he was thrown from the car to defendant's right of way.

Defendant denied all of the alleged acts of negligence and in addition urged that plaintiff contributed to his own injury by reason of his intoxication.

Plaintiff was fifty-eight years of age and had been in the employ of defendant intermittently, as a brakeman and conductor, for many years. On the night of July 12th, 1936, he arose at midnight and went to defendant's yard in Bloomington, Illinois, to report for duty upon a certain freight train, scheduled to leave the yards at 1:15 o'clock a. m. He searched about the yards for his caboose for some time without being able to find the same, but finally saw his train as it was moving out of the yards; and not having time to reach the caboose, boarded the tank car in question, expecting, as he says, to leave the tank car and catch the caboose when the train stopped at a station. He remained on the tank car until about 2 miles south of Odell, Illinois, when, he asserts, the brakes upon the tank car began to stick and he undertook to release them, whereupon the car gave a quick jerk and he was thrown from the running board to the right of way. It also appears from his testimony and from that of other witnesses called for plaintiff that the plaintiff may have slipped by reason of grease upon the running board. He was found by other trainmen about 5:30 in the morning, lying on the right of way. He was unconscious, his skull was fractured and concededly he was seriously injured. The trainmen took him to the Veterans' Hospital at Dwight, Illinois, where he remained for four days, and he was then taken to a hospital at Bloomington, Illinois, where he remained until August 4, 1936.

Plaintiff resumed work for defendant about December 15, 1936, and worked substantially continuously thereafter until the latter part of July, 1937, when he was discharged by defendant, due as defendant claims to his drinking of intoxicating liquor. Plaintiff denies the drinking.

Witnesses testified that at the time of finding plaintiff on the right of way, a bottle partially filled with whiskey was leaning against him, and other witnesses testified to the odor of alcohol upon his breath at the time of finding him, and at the time of being received at the hospital. Plaintiff denies that the whiskey bottle was his, but asserts that it was planted there and denies that he had been drinking intoxicating liquor on the night in question, except that he had a bottle of beer before leaving his home.

Errors relied upon for reversal are:

(1) Improper rulings upon evidence and improper comments by the trial court at the time of such rulings;

(2) Improper comments by defendant's counsel during the trial and in the arguments to the jury;

(3) Verdict against manifest weight of the evidence;

(4) Failure to allow plaintiff's motion for new trial.

■ Under the first assignment of error plaintiff urges principally that it was error for the Court to receive evidence of plaintiff's drinking subsequent to the time of the accident. Much evidence was received in relation to plaintiff's alleged drinking in the month of July, 1937, while plaintiff was in the employ of defendant. Although controverted, defendant's evidence indicates that plaintiff was intoxicated while on duty, a bottle of whiskey was taken from his possession (in evidence as

Defendant's Exhibit 10), and he was subsequently discharged as a result of his alleged drinking. Repeated inquiry by the Court brought the response from plaintiff's counsel that plaintiff was contending at all times that he was completely and totally disabled from work and was claiming damages not only for pain and suffering but for loss of wages. If his loss of wages was due, as defendant asserts, to his having been discharged on account of drinking and not due to the accident it was proper for the jury to know this. The fact that he worked for defendant for a considerable period of time following the injury was pertinent; and if he was discharged as a result of drinking and not on account of his otherwise being physically disabled this was also relevant to the jury's inquiry. It must be remembered that plaintiff was contending throughout the trial that he never used intoxicating liquors and that the whiskey bottles alleged to have been found on or near his person were not his but that defendant's agents, as he says, "Framed up on me and got me discharged." In view of his claim for damages, it cannot be said that his drinking habits subsequent to the injury and during the period for which he was seeking compensation were wholly immaterial.

■ Plaintiff also urges that there was not sufficient identification of Exhibits 9 (the bottle said to have been found at plaintiff's side at time of injury) and 10 (the bottle taken from plaintiff in 1937) to warrant their being received in evidence and further, that each contained improper identifying memoranda attached to same. We have examined the evidence in this respect and the testimony of the witnesses Moore, Akridge, Thornton, Lusher and Buell is ample basis for the receipt of these exhibits. The memoranda contained on each exhibit we think not prejudicial in view of the testimony, but in any event the objection to receipt of the exhibits was not specific enough to preserve this point.

■ Plaintiff argues that it was error to exclude certain proffered testimony of the witness Elliott. Plaintiff offered to prove by this witness that witness had told plaintiff of a certain conversation had with one Dibble (a witness for defendant) wherein Dibble was alleged to have said that if he ever got back to work he would get Chapman's job if he had to plant a bottle on him. Evidence of what Dibble is alleged to have said was properly received by the Court for the reason that it tended to discredit Dibble's previous testimony; but whether Elliott conveyed to plaintiff the information concerning what Dibble had said was wholly irrelevant. It was a statement made to plaintiff out of the presence of any representative of defendant, offered only for the purpose of showing the state of mind of plaintiff on the occasion testified to by Dibble, and we perceive no rule of law that would have justified its admission.

■■ Plaintiff urges that certain comment of the trial Judge was prejudicial. During examination of the witness Connery he was asked about plaintiff's condition subsequent to the accident and upon objection the Court inquired, "Aren't you claiming he was incapacitated from the time he filed this law suit?" Upon receiving an affirmative reply from plaintiff's counsel the witness was allowed to answer. In the examination of the witness Hibbins and under similar circumstances the Court commented in overruling an objection: "This is on the theory that you are accounting for his activity during the time between the accident and the day the law suit was filed. They are claiming damages for all that time." In the examination of the witness Davidson, a police officer, witness was asked if he observed plaintiff's condition as to sobriety. Upon objection by plaintiff's counsel that witness had not shown that he knew when a man is drunk or sober, the Court said, "Now just what qualifications does a witness have to have to say whether a man is drunk or sober? You are a police officer, aren't you?" Other similar instances are called to our attention. In none of them do we perceive anything improper or prejudicial in the comment of the Court. We think the remarks are not reasonably susceptible to the interpretation plaintiff places upon them and could not have prejudiced the jury. It is entirely proper for the Court to indicate to counsel the basis of his ruling upon matters of evidence not only in the interest of fairness but for the guidance of counsel in the subsequent examination. South Park Com'rs v. Ayer, 245 Ill. 402, 92 N.E. 274.

■ Plaintiff argues that the remarks referred to and others of the trial Court were calculated to indicate to the jury the Court's views upon matters of evidence and

the importance to be accorded certain testimony and in support cites many Illinois authorities of both the Supreme and Appellate Courts, holding it error for the trial court to thus comment upon the evidence. It is significant that counsel cites no federal case upon this point in his brief and gives no consideration to the fact that **a** much more liberal practice, in this respect, prevails in the federal courts. See Quercia v. United States, 289 U.S. 466, 53 S. .Ct. 698, 77 L.Ed. 1321 (and cases there cited); United States v. Meltzer, 7 Cir., 100 F.2d 739 (and cases there cited).

 Complaint is made of alleged improper remarks by defendant's counsel both during the examination of witnesses and in the closing argument. In appraising such objection the court is obliged to vision the situation as it then presented itself. Much depended upon the circumstances that provoked the comment complained of. In the argument to the jury much depended upon the scope and character of the opposing argument. Viewed from every reasonable standpoint, we find nothing in the remarks of counsel to be seriously criticized and nothing in the argument that was not within the scope of proper forensic discussion before the jury. If confined to the evidence or the reasonable inferences to be drawn therefrom, the argument of counsel is not to be too narrowly limited. Walsh v. Chicago Ry. Co., 303 Ill. 339, 135 N.E. 709; Chicago City Ry. Co. v. Creech, 207 Ill. 400, 69 N.E. 919; Casey v. Kelly-Atkinson Co., 240 Ill. 416, 88 N.E. 982; North American Restaurant v. McElligott, 227 Ill. 317, 81 N.E. 388.

 By assignment of error three plaintiff urges reversal on the ground that the verdict of the jury was against the manifest weight of the evidence. The duty of this Court under this assignment is limited to ascertaining if there was any substantial evidence supporting the jury's verdict. The credibility of the witnesses, the inferences to be drawn from proven facts, the weight to be accorded the various items of evidence were exclusively for the jury. The rule to be followed is too familiar to warrant extended discussion. Geo. E. Keith Co. v. Abrams, et al., 3 Cir., 43 F.2d 557; Grand Trunk Western Ry. Co. v. Heatlie, 6 Cir., 48 F.2d 759. It is sufficient to observe that an examination of the 1,164 page transcript submitted herein leaves no doubt of the jury question.

A diligent study of the record as a whole, together with due consideration of the briefs and argument, convinces us that plaintiff has had a fair trial. Some errors have intervened as is usual in a long case, involving sharply controverted questions of fact, and in which many witnesses appeared, but we find none warranting us in voiding the jury's verdict.

The judgment of the District Court is affirmed.